**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-94 (2) (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| RODNEY MICHAEL GODBOUT, | |
| Defendant. | |

> Andrew S. Dunne and Jeffrey S. Paulsen, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.
>
> Paul Egtvedt, **EGTVEDT LAW FIRM P.L.C.**, 2915 Wayzata Boulevard, Minneapolis, MN 55405, for defendant.

Defendant Rodney Michael Godbout's ("Godbout") has brought a motion for relief pursuant to 28 U.S.C. § 2255. Godbout argues that his sentence should be vacated because he pled guilty under the erroneous assumption that he would be transferred to Canada to serve out his prison term. Because Godbout has not shown that his sentence and continued incarceration amounts to a constitutional violation or a complete miscarriage of justice, the Court will deny Godbout's motion.

**BACKGROUND**

I.     **GODBOUT'S GUILTY PLEA AND SENTENCING**

Godbout was born and resided in Ontario, and is a Canadian citizen. (Change of Plea Tr. ("Plea") at 4, Nov. 25, 2014, Docket No. 51.) In 2006, Godbout was caught conspiring to transport and distribute drugs into the United States when a courier that he used to bring ecstasy over the border from Canada was apprehended at International Falls, Minnesota, with 46,000 tablets of ecstasy. (*Id.* at 7-8.) Around the same time, Godbout was facing other related drug charges in Canada. (Decl. of Paul Egtvedt ("Egtvedt Decl."), Ex. 2 ("Sentencing") at 10-17, Sep. 24, 2014, Docket No. 46.) In order to allow for prosecution in both Canada and the United States, prosecutors from both countries reached an agreement in which Godbout would be prosecuted for the incident at International Falls in the United States and prosecuted for the separate Canadian drug charges in Canada. (*Id.*) On March 20, 2007, Godbout and co-defendant Andrew Wakeling ("Wakeling") were indicted in the United States on charges of conspiracy to distribute ecstasy and possession with intent to distribute ecstasy. (Indictment, Mar. 20, 2007, Docket No. 1.)

Godbout pled guilty to the conspiracy charge on March 30, 2010, and the Court accepted the plea. (Plea at 1, 22-23.) At the plea hearing, Godbout pled guilty to the facts alleged in Count 1 of the indictment and indicated that he understood the plea agreement. (*Id.* at 7-8, 12, 17-18.) He also indicated that he had not felt coerced to plead guilty, nor had he been made any promises – outside of the plea agreement – in exchange for his plea. (*Id.* at 18.) At the plea hearing, the Court indicated that, as a result of his

guilty plea, Godbout was facing a maximum sentence of twenty years in prison and a U.S. Sentencing Guidelines range of 135 to 168 months. (*Id.* at 11-13.) The Court also noted that the sentence could be higher and that, if the sentence was higher, "that [would not] be a ground for [Godbout] to withdraw [his] plea." (*Id.* at 16.)

On June 23, 2010, Godbout was sentenced to 96 months in prison, with 3 years of supervised release. (Minute Entry, Jun. 23, 2010, Docket No. 41.) At sentencing, counsel for Godbout and the United States both indicated that it was likely that Godbout would be transferred to Canada to serve part of his sentence in that country. (Sentencing at 8-9, 13). Counsel for the United States indicated that, once transferred, a prisoner generally obtains the benefit of Canadian law, including more lenient parole laws that could reduce the length of Godbout's sentence. (*Id.* at 13-14.) Godbout's own counsel, however, noted that the process can be a lengthy one and that "unfortunate[ly,] going into [the process] there are no assurances as to what is going to happen." (*Id.* at 9.)

The Court inquired of the parties as to whether a transfer would be "fairly automatic" and counsel for the United States indicated that he would need a "good reason" to object to a transfer, such as that Godbout would be needed as "a witness against somebody else." (*Id.* at 21-22.) The United States could not keep Godbout in the United States simply because it objected to the comparative leniency of Canadian drug laws. (*Id.*) The Court stated that because the United States lacked a cooperation agreement, keeping Godbout in the United States as a witness likely would not be a "valid argument" to oppose transfer. (*Id.* at 22.) The United States responded affirmatively. (*Id.*) Nevertheless, defense counsel again stated while he thought it likely

Godbout would be transferred to Canada, he had "seen things go haywire before" and that no guarantee existed. (*Id.*)

The Court then sentenced Godbout to 96 months in prison, but noted that it anticipated Godbout would "not serve 96 months given the way the treaties work with Canada." (*Id.* at 25.) The Court noted that the sentence would, more likely, be somewhere in the range of half of 96 months. (*Id.*) The Court stated that a sentence somewhere in the four- to five-year range would be appropriate, in addition to time already served. (*Id.*) The Court also cautioned, however, that it did not control the transfer determination or the interplay of treaties between Canada and the United States and that it could not predict with certainty when the transfer would occur or how long any time served in Canada might be. (*Id.* at 24-25.) The Court explained that a 96-month sentence was still a variance below the guideline range, which at the low end was 135 months. (*Id.* at 25.) The Court explained further that it had based its decision on the statutory sentencing factors found in 18 U.S.C. § 3553, including Godbout's history and characteristics, the serious nature of his offense, and his attempts to preclude one witness from testifying against him. (*Id.* at 26.)

## II.   POST-SENTENCING DEVELOPMENTS

Since sentencing, Godbout has twice had a request for a transfer denied, first on June 14, 2011, and again on November 5, 2013. (Egtvedt Decl., Exs. 3, 4.) Godbout's transfer requests were denied because he might have been "needed as a witness" in the Minnesota U.S. Attorney's office prosecution of Godbout's co-defendant, Andrew Wakeling. (Opp'n to Def.'s Mot. for Relief Pursuant to 28 U.S.C. § 2255 ("Opp'n

Mem.") at 2, Dec. 2, 2014, Docket No. 52.) Wakeling fought extradition for years until the Canadian Supreme Court issued a final ruling affirming his extradition in 2014. *Wakeling v. United States*, 2014 S.C.C. 72, 3 S.C.R. 549 (Can. 2014).[1] Wakeling has since pleaded guilty to Count 1 before this Court and the United States has lifted any opposition to Godbout's transfer to Canada. (*United States v. Wakeling*, No. 07-94(1) (Plea Hearing, Docket No. 83, Feb. 18, 2015); Mar. 6, 2015 Letter by United States ("Mar. 6 Letter") at 2, Mar. 23, 2015, Docket No. 87.) Although Godbout claims he cannot do so until November of 2015 or later, the United States contends that Godbout could easily apply for transfer due to changed circumstances in his case (i.e., Wakeling's guilty plea). (Mar. 6. Letter at 2.) Godbout estimates that his sentence exceeded five years of incarceration on January 6, 2015. (Def.'s Mem. in Supp. of Mot. for Relief Pursuant to 28 U.S.C. § 2255 ("Def.'s Mem.") at 6, Sept. 24, 2014, Docket No. 45.)

Probation and Pretrial Services ("Probation") for the District of Minnesota projects that Godbout will be released on April 27, 2016. (Probation Letter at 2, Nov. 26, 2014, Docket No. 56.) Probation also notes that Godbout has incurred disciplinary action on several occasions while in prison. (*Id.*) The United States clarified that those disciplinary actions might constitute independent grounds for the U.S. Department of Justice to deny his transfer. (Mar. 6 Letter at 3.)

Also relevant to Godbout's case is the November 1, 2014 amendments to the Sentencing Guidelines' Drug Quantity Table, Amendment 782. U.S.S.G. § 2D1.1(c). While these amendments have been given retroactive effect, they may not be applied to a

---

[1] *Available at* http://scc-csc.lexum.com/scc-csc/scc-csc/en/item/14439/index.do.

prisoner's sentence unless the order becomes effective on November 1, 2015 or later. U.S.S.G. § 1B1.10(e). Consequently, "offenders cannot be released from custody pursuant to retroactive application of [the November 2014 amendments] before November 1, 2015." (Probation Letter at 1.) Probation notes that, under the November 2014 amendments, Godbout's advisory guidelines range would be decreased from 135 to 168 months, to 108 to 135 months. (*Id.* at 2.) Godbout's sentence of 96 months is still a variance downward from the revised guidelines range applicable in Godbout's case.

Godbout filed this motion for relief on September 24, 2014, seeking "to correct a fundamental miscarriage of justice" and vacate his sentence. (Def.'s Mot. for Relief Pursuant to 28 U.S.C. § 2255, Sept. 24, 2015, Docket No. 44.) Godbout argues that his guilty plea was not knowing or voluntary because he pled guilty based on his understanding that he would be transferred to Canada to serve out his sentence. He argues that the Court had the same understanding of his sentence and, consequently, the sentence was infected by error, such that his continued detention is unfair.

## DISCUSSION

### I.  STANDARD OF REVIEW

Section 2255 allows a federal prisoner a limited opportunity to seek post-conviction relief on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow

range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Eagle v. United States,* 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

## II.     GODBOUT'S SENTENCE

### A.     Validity of Guilty Plea

Godbout argues that his continued incarceration is a violation of his due process rights because the false prediction that he would be granted a transfer to Canada induced him to enter a guilty plea that was not knowing and voluntary. In support of this theory, Godbout cites *Brady v. United States*, arguing that his plea was involuntary because he did not understand the "direct consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). Because he believed that he would be out of prison after five years, Godbout claims that he did not understand the direct consequences of his guilty plea and that keeping him in custody is therefore a violation of his constitutional rights under *Brady*.

A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The Supreme Court in *Brady* also stated, however, that "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady*, 397 U.S. at 757.

The Court concludes that Godbout's plea was knowing and voluntary and that his continued detention does not violate his constitutional rights. The record shows that, at the plea hearing, Godbout conceded that he was not made any promises to induce his plea. He also stated that he understood that he faced a maximum sentence of 20 years, and a sentencing range of 135 to 168 months. Indeed, the issue of a transfer to Canada did not arise at the plea hearing. Godbout offers no support, beyond his own after-the-fact declaration, that his guilty plea was induced by a promise that he would be transferred to Canada and serve a prison term of five years or less. (Def.'s Decl. ¶¶ 5-7, Sept. 24, 2014, Docket No. 47); *see also United States v. Hughes*, 16 F.3d 949, 951 (8th Cir. 1994) (concluding that a defendant's allegations after the plea were "inherently unreliable" in light of his testimony at the plea hearing); *United States v. Johnson*, 751 F.2d 291, 294 (8th Cir. 1984) (stating that "the representations of a defendant at a guilty plea hearing constitute a formidable, although not insurmountable, barrier in any subsequent collateral proceeding" (internal quotation marks and alterations omitted)).

Moreover, even if the discussion at sentencing about a prison transfer to Canada – which occurred **after** Godbout had pled guilty – could have influenced Godbout's plea, neither the Court nor the United States made any promises about how quickly the transfer would occur. Indeed, Godbout's own counsel at the time of sentencing explicitly stated, on at least two occasions, that a transfer was uncertain and might not occur. *See McMann v. Richardson*, 397 U.S. 759, 770 (1970) ("[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea . . . .").

Finally, as both Godbout and the United States note, a defendant's miscalculation or misunderstanding about the duration of the sentence he is facing is not a basis for rejecting a guilty plea. *See, e.g.*, *United States v. Haubrich*, 744 F.3d 554, 558-59 (8th Cir. 2014). Godbout fails to explain sufficiently why this case involves a "far more material error" than in the general misunderstanding cases in the Eighth Circuit. (Def.'s Mem. at 9.) Moreover, as noted above, to the extent Godbout claims that the promise of a prison transfer and a shorter sentence was "at the heart" of why he pled guilty, (*id.*), the transcript of the plea hearing unequivocally shows otherwise. In sum, the Court will reject Godbout's argument that his sentence should be vacated because his guilty plea was not knowing and voluntary.

### B.   Error Underlying Sentence

Godbout also argues that his sentence represents a miscarriage of justice and must be vacated because a factual error – namely the presumption that Godbout would be transferred to Canada – infected the Court's sentence. While it is true that the Court understood a transfer to Canada for Godbout to be likely, both the Court and Godbout's attorney noted that a transfer was not an absolute certainty. Moreover, while the Court articulated that sentence of 4 to 5 years was a reasonable range for Godbout, it still announced a sentence of 96 months and did not state that a specific lower amount was definitively the more appropriate sentence for Godbout. Moreover, the 96-month sentence was still more than 36 months below the then-applicable guidelines range and is below the new, revised guidelines range as well.

Additionally, the Supreme Court has stated that "there is no basis for enlarging the grounds for collateral attack [under § 2255] to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *United States v. Addonizio*, 442 U.S. 178, 187 (1979). Courts have interpreted *Addonizio* to mean that a sentence cannot be vacated or modified "merely because the sentencing judge was mistaken about the length of time [the defendant] would likely serve prior to parole." *United States. v. Whittington*, 918 F.2d 149, 151 (11th Cir. 1990) (citing *United States v. Dean*, 752 F.2d 535, 543 (11th Cir. 1985)). Godbout has failed to distinguish his case and the Court's sentencing decision from cases like *Addonizio* and *Whittington* and has not shown how his sentence amounts to a "complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704-05 (8th Cir. 2011) (internal quotation marks omitted). As a result, the Court will deny Godbout's Section 2255 motion.[2]

## III.   CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Copeland v. Washington,* 232 F.3d 969, 977 (8th Cir. 2000). To make such

---

[2] To the extent Godbout argues that the he is entitled to relief under 28 U.S.C. § 2241, (Def.'s Mem. at 11), the Court disagrees and will not grant relief under that statute either.

Finally, the Court will also reject Godbout's implicit request to have his sentence retroactively reduced under the November 2014 amendments to the U.S. Sentencing Guidelines. (May 5, 2015 Letter by Godbout ("May 5 Letter"), May 5, 2015, Docket No. 89.) Because the Court's sentence of 96 months is below even the amended guidelines range, the Court may not retroactively reduce Godbout's sentence. U.S.S.G. § 1B1.10(b)(2)(A).

a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings. *See Flieger v. Delo,* 16 F.3d 878, 882-83 (8th Cir. 1994). The Court finds it unlikely that another court would decide the issues raised in Godbout's motion differently. The Court concludes that Godbout has failed to make the required substantial showing of the denial of a constitutional right and will therefore not grant a certificate of appealability.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Godbout's Motion for Relief [Docket No. 44] is **DENIED**.

2. Godbout's request for relief pursuant to the November 2014 amendments to the U.S. Sentencing Guidelines [Docket No. 89] is **DENIED**.

3. The Court does not certify for appeal under 28 U.S.C. § 2253(c) the issues raised in Godbout's motion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 13, 2015      ____s/ John R. Tunheim____
at Minneapolis, Minnesota.      JOHN R. TUNHEIM
     Chief Judge
     United States District Court